IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GOLD ANTI-TRUST ACTION          )
COMMITTEE, INC.                 )
7 Villa Louisa Road             )
Manchester, Connecticut  06043-7541,   )
                                )
        Plaintiff,            )
                                )
        v.                    )        Civil Action No. _____
                                )
BOARD OF GOVERNORS              )
OF THE FEDERAL RESERVE SYSTEM   )
20th & Constitution Avenue, N.W.        )
Washington, D.C.  20551,        )
                                )
        Defendant.            )

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, for injunctive and other appropriate relief, to enjoin defendant from withholding from public disclosure certain records within its possession and control and to order defendant to release those records that were duly requested by plaintiff and wrongfully withheld by defendant.

## JURISDICTION AND VENUE

2.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this judicial district under 5 U.S.C. § 552(a)(4)(B).

2

**PARTIES**

3.  Plaintiff, Gold Anti-Trust Action Committee, Inc. ("GATA"), is a nonprofit educational organization incorporated under the laws of Delaware, is tax-exempt under section 501(c)(3) of the Internal Revenue Code of 1986, and is classified as a public charity.  GATA is an educational organization engaged in a variety of research and public education activities relative to economic and monetary policy, with a particular focus on the role, price and supply of gold.  GATA's activities include, *inter alia*, attempting to monitor the policies and actions of the United States with respect to gold, and educating the public concerning governmental and nongovernmental efforts to affect and/or manipulate supply and demand for gold and the price of gold.

4.  Defendant, the Board of Governors of the Federal Reserve System, also doing business or known as the Federal Reserve Board  ("FRB"), is an independent board within the Executive Branch of the United States Government.  Defendant is an agency within the meaning of 5 U.S.C. § 552(f), established by statute and charged with responsibility for, *inter alia*, conducting the nation's monetary policy by influencing the monetary and credit conditions in the economy, supervising and regulating banking institutions, and providing financial services to depository institutions, the U.S. government, and foreign institutions. Defendant FRB has possession of and control over the records, memoranda, reports, documents, publications and similar papers and files sought by plaintiff in this action, and is responsible for fulfilling plaintiff's FOIA request at issue herein.

3

## FACTS UNDERLYING PLAINTIFF'S
## CAUSE OF ACTION AND PRAYER FOR RELIEF

**The Subject of Gold Swaps**

5.  Plaintiff educates the public with respect to certain government policies and

practices affecting the United States monetary system, including the policies and procedures by

which the United States affects and/or manipulates supply and demand for gold and the price of

gold.  Plaintiff monitors periodically certain of the defendant's activities, including its Internet

website, as well as the Internet websites of other government agencies.

6.  Plaintiff believes that defendant possesses numerous documents relative to "gold

swaps," including, but not limited to, records of gold swaps involving the United States since

1990 sought in its FOIA request at issue herein.  Defendant, however, has failed and refused to

provide such documents to plaintiff, and has claimed that certain of its records are exempt

from disclosure without indicating the precise nature of such documents.

**GATA's Initial 2007 FOIA Request**

7.  By letter dated December 6, 2007, plaintiff submitted a FOIA request to defendant

FRB seeking copies of all records in the possession or control of FRB relating to, explaining,

denying or otherwise mentioning "gold swaps" involving the United States of America or any

agent thereof, during the time period January 1, 1990, to December 6, 2007, the date of the

request.

8.  By letter dated April 9, 2008, FRB responded to plaintiff's FOIA request,

producing certain records and withholding others.  In addition to certain redactions from

records that were produced, 137 pages of responsive records were withheld in full.  FRB

4

claimed that the withheld records were exempt under:  (i) FOIA exemption (b)(4) — that is, 5

U.S.C. section 552(b)(4), often referred to as the "trade secrets or confidential financial

information" exemption; (ii) FOIA exemption (b)(5) — that is, 5 U.S.C. section 552(b)(5),

often referred to as the "deliberative process" exemption; or (iii) FOIA exemption (b)(6) —

that is, 5 U.S.C. section 552(b)(6), often referred to as the "privacy" exemption.  There was

no identification of those documents, however, either in the denial letter of April 9, 2008, or

any other document transmitted to GATA, nor was there any reasonable explanation as to the

factual basis for any claim of exemption on which such documents were withheld.

     9.  By letter dated May 5, 2008, GATA appealed the FRB's partial denial of GATA's

December 6, 2007 FOIA request, questioning the legality of the FRB's withholding of the

records, (i) explaining that FRB had not furnished sufficient information for GATA to

determine whether the disclosure exemptions claimed by FRB actually should apply, and (ii)

submitting that, even if any of the withheld documents arguably were covered by an

exemption, the importance of the information being sought with respect to the confidence of

the American people in the integrity nation's gold stocks justified a discretionary release of

such documents by the FRB "in the public interest," as authorized by the FRB regulations set

forth at 12 CFR section 261.14(c).  Alternatively, GATA requested that the FRB provide an

index — of the type emanating from the decision in <u>Vaughn</u> v. <u>Rosen</u>, 484 F.2d 820 (D.C.

Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), and referred to as a <u>Vaughn</u> Index — of any

documents completely or partially withheld, identifying the nature and date of each document,

the FOIA exemption claimed, and the basis for each such claim.

     10.  By letter dated June 3, 2008, FRB denied GATA's appeal.

5

**GATA's Current 2009 FOIA Request**

11.  By letter to defendant FRB dated April 14, 2009 (Exhibit A hereto, referred to

hereinafter as "plaintiff's FOIA request"), plaintiff requested under FOIA the disclosure of:

> copies of all records in the possession or control of the Federal
> Reserve Board relating to, explaining, denying or otherwise mentioning:
> - **"gold swap**,"
> - **"gold swaps**,"
> - **"gold swapped**,"
> - **"proposed gold swap**,"
> - **"proposed gold swaps**," or
> - **"proposed gold swapped**."
>
> during the time period **January 1, 1990, to the date of this request** either
> (a) **involving** the United States of America, or any department, agency or agent
> thereof,
> or
> (b) **not involving** the United States of America.  [Emphasis original.]

Without limiting its FOIA request, but in an effort to particularize certain categories of records

covered by its request, plaintiff expressly requested copies of the following:

> 1. All records defining, in whole or in part, or explaining or referring to "gold
> swapped," as that term is used in describing "official reserve assets" in the
> Treasury Department's "U.S. International Reserve Position" press releases
> issued beginning May 14, 2007.  This series of press releases is illustrated by
> the most recent such release of April 14, 2009 (number 2009-4-14-14-18-49-
> 3770), entitled "U.S. International Reserve Position" found on the Department
> of Treasury website, at line I.A.(4) (using the term "gold swapped")
> http://www.treas.gov/press/releases/20094141418493770.htm (said line
> I.A.(4) is hereinafter referred to as "the gold swapped line-item").

> 2. All records demonstrating the accuracy of "the gold swapped line-item" (*i.e.*,
> "gold (including gold deposits and, if appropriate, gold swapped)") in the
> above-referenced press release of April 14, 2009.

> 3. All records defining, in whole or in part, or explaining or referring to "gold
> swaps"as that term is used in the following answer in "FAQs: International,
> Gold & Silver" section of the Department of Treasury website, at
> www.treas.gov/education/faq/international/goldsilver.shtml (said reference
> being hereinafter referred to as "the FAQ gold swap item"):

"Neither the ESF, nor the Treasury Department, nor the Federal Reserve made any gold swaps during this period."

4. All records relied upon in making, supporting, or contradicting the above-quoted representation in the FAQ gold swap item (*i.e.*, that "Neither the ESF, nor the Treasury Department, nor the Federal Reserve made any gold swaps during this period").

5. All records identifying, explaining, or referring to either (a) the type of transaction, or (b) specific transactions encompassed within the term "gold swapped" in the gold swapped line-item, as well as in the term "gold swaps" as used in the FAQ gold swap item.

6. All records identifying, explaining or referring to, in whole or in part, the following change in the Treasury Department's press releases:
      • Prior to May 11, 2007, the line-item accounting for United States' gold reserves appeared as: "(4) Gold stock." *See* Treasury Department press release of May 8, 2007,
      http://www.treas.gov/press/releases/2007581342179779.htm.
      • On and after May 11, 2007, the line-item accounting for United States' gold reserves appeared and now appears as follows: "I.A.(4) gold (including gold deposits and, if appropriate, gold swapped)."

7. All records identifying or referring to the legal authority for "gold swap," "gold swaps," or "gold swapped" of any kind under United States law, including any "gold swap," "gold swaps," or "gold swapped" that have actually occurred, or are planned for the future.

8. All records identifying or referring to the legal authority for "gold swaps" or "gold swapped" of any kind under the law of any country other than the United States, including any "gold swap," "gold swaps," or "gold swapped" that have actually occurred or are planned.

9. All records describing, in whole or in part, or referring to, the procedure by which "gold swap," "gold swaps," or "gold swapped," whether included in the gold line-item or not,
      a. actually have taken place, or
      b. may take place in the future.

10. All records identifying, explaining, referring to, or describing, in whole or in part, any "gold swap," "gold swaps," or "gold swapped" involving the United States, including, but not limited to, any agent, agency, or

7

instrumentality of the United States, that have taken place during the period January 1, 1990 to the date of this request.

11. All records identifying, explaining, referring to, or describing, in whole or in part, any "gold swap," "gold swaps," or "gold swapped" of any country (or political subdivision) and/or any individual or entity that have taken place during the period January 1, 1990 to the date of this request.

12. All records identifying, explaining, describing, or referring to United States policy, including, but not limited to, the policy of the Department of the Treasury, the Federal Reserve System, and/or Federal Reserve Board of Governors, with respect to "gold swap," "gold swaps," or "gold swapped."

13. All records setting out requests for information with respect to gold swaps and/or any of the matters set forth in request numbers 1-12 above, during the period January 1, 1990 to the present, including, but not limited to, (a) requests from members of Congress, (b) requests from non-U.S.-government-related persons and entities, and (c) FOIA requests other than GATA's FOIA request of December 6, 2007.

14. All Federal Reserve Board responses to the requests referenced in request number 13.

15. All records relating to and/or mentioning the requests identified in request number 13, and all records relating to and/or mentioning the responses identified in request number 14.

16. The records withheld by the Federal Reserve Board in response to GATA's December 6, 2007 FOIA request.

17. All records of FOIA requests submitted by other persons which requested records involving: (a) the GATA FOIA request of December 6, 2007; or (b) the records provided to GATA in response to its FOIA request of December 6, 2007 since December 6, 2007.

18. FOIA requests made by persons or entities other than GATA for records relating to "gold swap," "gold swaps," or "gold swapped" since January 1, 1990.

8

**The Obama Administration's Presumptions of Openness and Disclosure**

12.  In his January 21, 2009 Memorandum for the Heads of Executive

Departments and Agencies, President Barack Obama issued the following directive:

> The Freedom of Information Act should be administered with a
> clear presumption: In the face of doubt, openness prevails..... [i]n
> responding to requests under the FOIA, executive branch agencies …
> should act promptly and in a spirit of cooperation, recognizing that such
> agencies are servants of the public.  All agencies should adopt a presumption in
> favor of disclosure, in order to renew their commitment to the principles
> embodied in FOIA, and to usher in a new era of open
> Government. The presumption of disclosure should be applied to
> all decisions involving FOIA.  [74 *Fed. Reg.*, No. 15, pp. 4683-
> 84, (Jan. 26, 2009);
> http://www.whitehouse.gov/the_press_office/FreedomofInformati
> onAct/.]

13.  In light of President Obama's directive to executive agencies, as well as Attorney

General Eric Holder's Memorandum for Heads of Executive Departments and Agencies

(March 19, 2009), http://www.usdoj.gov/ag/foia-memo-march2009.pdf (issued pursuant to the

President's January 21, 2009 FOIA Memorandum, underscoring our nation's fundamental

commitment to open government), plaintiff's 2009 FOIA request sought from FRB (i) the same

records plaintiff  had sought in its December 6, 2007 FOIA request — aside from unredacted

records already actually produced by FRB — as well as (ii) additional records.

14.  Expressing its belief that the FRB, in processing GATA's 2007 FOIA request, had

not observed the principles set forth in President Obama's January 2009 directive, plaintiff

requested that the FRB act in accordance with those guidelines in processing GATA's 2009

FOIA request, urging FRB to consider — even if a FOIA exemption technically(and/or

arguably) may be assertable with respect to one or more responsive documents — discretionary

release of any such documents in accordance with section 261.14(c) of the FRB regulations, since such release would be in the public interest. In addition, GATA requested FRB — if the records demanded by GATA's FOIA request were not disclosed in full — to provide a <u>Vaughn</u> Index of any documents completely or partially withheld, identifying the nature and date of each document, the FOIA exemption claimed, and the basis for each such claim. Plaintiff's FOIA request of April 14, 2009, also contained a request for a fee waiver.

**FRB's Response to GATA's 2009 FOIA Request**

15.  By letter to plaintiff dated April 16, 2009, defendant FRB  acknowledged receipt of plaintiff's FOIA request, but did not respond to the substance of that request, or to plaintiff's request for a fee waiver.

16.  By letter to plaintiff dated May 12, 2009, defendant FRB again acknowledged receipt of plaintiff's FOIA request, and extended the time within which it would respond to that request to May 27, 2009, "in order to consult with another agency or with two or more components of the Board having a substantial interest in the determination of the Board." Again, defendant did not respond to the substance of plaintiff's FOIA request, nor did it reference plaintiff's request for a fee waiver.

17.  By letter dated August 5, 2009 (Exhibit B hereto), defendant responded to plaintiff's FOIA request, identifying only two responsive records — in addition to the 137 pages that had also been withheld by FRB previously in responding to GATA's 2007 FOIA request.  Defendant disclosed the two new records, comprised of 173 pages, some of which had apparently been redacted — although defendant did not alert plaintiff of any redaction — but defendant refused to disclose any of the 137 pages that had been withheld previously in

response to plaintiff's 2007 FOIA request.  Defendant claimed that the withheld records were

exempt under FOIA exemptions 4 and 5 — 5 U.S.C. section 552(b)(4) and (b)(5), respectively

— but there was no identification of those records  nor was there any reasonable explanation as

to the factual basis for any claim of exemption on which such records were withheld.

Defendant also refused plaintiff's request for discretionary release of the withheld records, as

well as plaintiff's request for a Vaughn Index.

**GATA's Administrative Appeal and FRB's Denial of GATA's Appeal**

18.  By letter dated August 20, 2009 (Exhibit C hereto), plaintiff timely appealed

defendant's partial denial of its FOIA request, in conformity with the instructions contained in

the August 5, 2009 denial letter by defendant (Exhibit B hereto) and the requirements of 5

U.S.C. § 552.

19.  By letter to plaintiff dated September 17, 2009 (Exhibit D hereto), and signed by

Kevin M. Warsh, Vice Chairman of the Board of Governors of the Federal Reserve System,

defendant denied plaintiff's appeal.  That denial letter, *inter alia*, contains defendant's

admission that among the documents being withheld from plaintiff were documents concerning

"swap arrangements with foreign banks," on the basis that such information is not of a type

"customarily disclosed to the public," as follows:

> In connection with your appeal, I have confirmed that the information
> withheld under exemption 4 consists of confidential commercial or financial
> information relating to the operations of the Federal Reserve Banks that was
> obtained within the meaning of exemption 4.  This includes information relating
> to swap arrangements with foreign banks on behalf of the Federal Reserve
> System and is not the type of information that is customarily disclosed to the
> public.  This information was properly withheld from you.

11

20.   In addition to those records identified in its letter of August 5, 2009 as to which defendant has claimed a disclosure exemption, upon information and belief, defendant has possession or control of records that are responsive to plaintiff's FOIA request and that defendant has not identified in its letter of August 5, 2009 or claimed are exempt from disclosure.

21.   Plaintiff has exhausted the applicable administrative remedies.

22.   Defendant has wrongfully withheld the requested records from plaintiff, and wrongfully denied plaintiff's request for a fee waiver.

**PLAINTIFF'S CAUSE OF ACTION AND CLAIM FOR RELIEF**

23.   Plaintiff repeats and realleges paragraphs 1-22 of this Complaint as if fully set forth herein.

24.   Defendant's failure to timely respond to and grant plaintiff's request for disclosure and fee waiver violates the FOIA, 5 U.S.C. §§ 552(a)(3) and 552(a)(6)(E)(ii), and defendant FRB's own regulations promulgated thereunder, including those set forth at 12 C.F.R. sections 261.12 - 261.17.

25.   Plaintiff, having exhausted its administrative remedies, has a right of access to the requested records under 5 U.S.C. § 552(a), and there is no legal basis for defendant's denial of such access and fee waiver.

WHEREFORE, plaintiff prays that this Court:

1.   Enter judgment in favor of plaintiff and order the defendant to process the requested records expeditiously and in their entireties and, upon completion of such processing, to

12

disclose the requested records in their entireties and make copies available to plaintiff as requested by plaintiff;

2.  Award plaintiff its costs and reasonable attorney fees in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

3.  Grant such other and further relief as the Court may deem just and proper.


/s/

_____

WILLIAM J. OLSON
(D.C. Bar No. 233833)

/s/

_____

JOHN S. MILES
(D.C. Bar No. 166751)

HERBERT W. TITUS
JEREMIAH L. MORGAN
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180-5615
703-356-5070 (telephone)
703-356-5085 (fax)
wjo@mindspring.com

Counsel for Plaintiff